UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TAMARA LEWIS,<br><br>               Plaintiff,<br><br>     v.<br><br>GREGORY FISHER, D.D.S., and KATHLEEN ANN STOCKMAN, husband and wife, GREGORY R. FISHER, DDS EMPLOYEE BENEFIT AND WELFARE PLAN,<br><br>               Defendants,<br><br>GREGORY FISHER, D.D.S., and KATHLEEN ANN STOCKMAN, husband and wife, GREGORY R. FISHER, DDS EMPLOYEE BENEFIT AND WELFARE PLAN,<br><br>               Cross Claimants,<br><br>     v.<br><br>REGENCE BLUESHIELD, a Washington nonprofit corporation,<br><br>               Defendant. | Case No. C06-5352RJB<br><br>**ORDER** |

     This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment Against Gregory Fisher and Gregory R. Fisher, DDS Employee Benefit and Welfare Plan (Dkt. 47), and on Gregory Fisher, D.D.S. and Kathleen Ann Stockman, husband and wife, and Gregory R. Fisher, DDS,

ORDER
Page - 1

Employee Benefit and Welfare Plan's Cross Motion for Summary Judgment (Dkt. 49). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file herein.

## I. FACTS AND PROCEDURAL HISTORY

This case arises out of Plaintiff's claims for benefits and breach of fiduciary duty under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, and for federal equitable estoppel. Dkt. 55.

### A. BASIC FACTS

Plaintiff was employed as a dental assistant for Lewis Fisher, D.D.S. ("Dr. Fisher"). Dkt. 26, at 1. On November 1, 2004, Plaintiff was terminated from her position with Dr. Fisher because she was too ill to continue to perform her duties. Dkt. 26, at 1-2. Plaintiff has Crohn's disease. *Id.* at 1. During her employment, Dr. Fisher provided medical benefits for her and for other members of his staff through an employee benefit and welfare plan entitled Gregory R Fisher DDS ("the Plan"). Dkt. 30-2, at 1. Dr. Fisher funded the medical benefits through a group health insurance policy with Regence Blueshield ("Regence"). Dkt. 23, at 5-66. Dr. Fisher identifies the Plan as being contained within two documents: the Summary Plan Description, (Dkt. 30-3, at 24-66) and Group Administrative Manual (Dkt. 30-2, at 7-74 continued in Dkt. 30-3, at 1-23). The record also contains additional documents: the Group Master Application for the health insurance policy (Dkt. 30-2, at 1-6), and the Group Insurance Contract with Regence (Dkt. 23, at 5-66). It is undisputed that Dr. Fisher is the plan administrator. Parties also do not dispute that Regence is the claims administrator. Both the Summary Plan Description and the Group Administrative Manual indicate that Regence "will have discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Dkt. 30-3, at 53, and Dkt. 23, at 39.

According to the Summary Plan Description, in order to be eligible for health benefits, an employee must be "active" and "full time." Dkt. 30-3, at 29. The Group Administrative Manual reiterates this requirement and states that a "full time" employee means that the person regularly works the hours designated on the Master Application. Dkt. 30-2, at 26. On the Master Application, Dr. Lewis indicated that an eligible employee must work a minimum of 32 hours each week. Dkt. 30-2, at 2. The record indicates that Plaintiff worked at least 32 hours each week through at least March of 2004. Dkt. 48, at 10.

In August of 2004, Regence informed Don Mills, Dr. Fisher's insurance agent, that it would be performing a routine audit to verify both the group and member eligibility. Dkt. 25, at 6. The letter requests certain employment records be sent by September 3, 2004. *Id*. Dr. Fisher states that he believed that as of November 1, 2004, he had supplied Regence with all the information that they requested. Dkt. 23, at 71. However, Regence indicates that after working with Don Mills for several months to get the information, the relevant documents were received on November 23, 2004. Dkt. 30, at 2. Plaintiff states that she was unaware of the audit. Dkt. 26, at 2.

After Plaintiff was terminated on November 1, 2004, Dr. Fisher applied to Regence for a six month extension of benefits in accordance with the terms of the policy. Dkt. 24, at 1-2. On December 13, 2004, Dr. Fisher received a letter from Regence that stated, "[t]his letter will confirm that Tamara L. Lewis has been enrolled in the six month extension, with an effective date of October 1, 2004. The end date will be 03-31-2005, unless we are notified to terminate the eligibility prior to that date." Dkt. 24, at 3. Sometime after Plaintiff's termination on November 1, 2004, but before December 7, 2004, Plaintiff's husband contacted Dr. Fisher and asked him if his wife had health insurance. Dkt. 23, at 72. Dr. Fisher told Plaintiff's husband that "[a]s far as [he] knew, at that point there was." *Id.* According to Dr. Fisher, Plaintiff's husband did not tell him at that time that she was intending to have some medical procedures done. *Id*. at 73. Plaintiff's husband states that during that conversation he did tell Dr. Fisher that Plaintiff was scheduled to have some medical treatment at the hospital. Dkt. 61, at 2. Plaintiff was treated in a hospital in November and December of 2004 for her Crohn's disease. Dkt. 60, at 1. The treatment was not considered an emergency or urgently needed. Dkt. 60 at 1.

Dr. Fisher closed his office for around a week for Christmas break in 2004. Dkt. 58, at 11-12. He left town. *Id*. When he returned, he opened a letter from Regence, dated December 22, 2004, which stated that they were not renewing the plan's health insurance policy. Dkt. 50, at 12 and Dkt. 25, at 19. The letter indicated that "the group [was] not in compliance with contractual guidelines and will be canceled." *Id.* The letter also states that it served "as written confirmation that [Regence] [was] canceling coverage for the group effective September 31, 2004." *Id*.

Dr. Fisher then informed the other employees in this office receiving medical benefits under the plan of Regence's decision to not renew the policy effective retroactively on September 31, 2004. Dkt. 58, at

15. Dr. Fisher paid for one of the employee's uncovered medical expenses associated with the non-renewal of the policy. Dkt. 58, at 15-16. Sometime in January of 2005, Plaintiff received a notice of non-coverage from Regence, and Regence denied her claims for medical services. Dkt. 26, at 2. Dr. Lewis appealed Regence's decision to retroactively not renew the group health insurance contract and Regence's decisions regarding Plaintiff. Dkt. 48, at 5-23. His appeals were denied and this suit followed.

### B.  PROCEDURAL HISTORY

On October 31, 2005, Plaintiff filed a Complaint for Breach of Contract, Promissory Estoppel, and Negligent Misrepresentation in Washington State Superior Court for Pierce County. Dkt. 1-1, at 13. Plaintiff originally named Gregory Fisher, DDS, and Kathleen Ann Stockman, husband and wife, as defendants. *Id.* On May 18, 2006, the parties stipulated to the amendment of the Complaint to add Regence as a defendant. Dkt. 1-2, at 5. On June 23, 2006, Regence removed the action to this Court pursuant to 28 U.S.C. § 1441. Dkt. 1-1, at 1. On October 10, 2006, the parties stipulated to the entry of a Second Amended Complaint to add claims under ERISA against Regence. Dkt. 12, at 1. On November 3, 2006, Plaintiff filed a Motion to Amend to Join Additional Party, seeking to join "Gregory R. Fisher, DDS Employee Benefit and Welfare Plan." Dkt. 16. On December 5, 2006, the Court entered an Order joining the Plan as a party. Dkt. 18. On April 23, 2007, Plaintiff filed a "Third Amended Complaint (filed pursuant to Court Order dated December 1, 2006)." Dkt. 36.

On May 9, 2007, this Court dismissed Plaintiff's claims against Regence, and denied, without prejudice, Plaintiff's Motion to Amend her Complaint because the proposed complaint did not reflect changes she indicated that she was going to make to the complaint. Dkt. 41.

On May 23, 3007, Plaintiff re-filed the motion to amend her Third Amended Complaint, which was granted on June 21, 2007. Dkt. 54. That same day, Plaintiff filed her Fourth Amended Complaint. Dkt. 55. Plaintiff's Fourth Amended Complaint makes three claims: 1) recovery of plan benefits pursuant to 29 U.S.C. § 1132(A)(1)(B), 2) breach of fiduciary duty pursuant to 29 U.S.C. § 1132(A)(3), and 3) federal equitable estoppel. Dkt. 55.

### C.  PENDING MOTIONS

On June 6, 2007, (before her Fourth Amended Complaint was filed) Plaintiff filed her Motion for Partial Summary Judgment Against Gregory Fisher and Gregory R. Fisher DDS Employee Benefit and

Welfare Plan. Dkt. 47. Plaintiff argues that: 1) Defendant Fisher admits that she was eligible for benefits under the plan, 2) she was eligible regardless of the hours that she worked in the second or third quarter of 2004, 3) the fact that Dr. Fisher breached his contract with Regence is not a defense to Plaintiff's claim, and 4) she is entitled to attorney's fees. *Id*. Dr. Fisher responds and moves for summary dismissal of Plaintiff's claims arguing that: 1) Plaintiff is not entitled to benefits under the Plan, 2) Plaintiff's state law claims should be dismissed as preempted by ERISA, 3) although Plaintiff has characterized other claims against the Plan and Dr. Fisher as state law claims, it appears that Plaintiff may be asserting those as breach of fiduciary responsibility claims and they should be dismissed, 4) to the extent that Plaintiff is making an equitable claim under 29 U.S.C. § 1132(a)(3), no relief is available to her. Dkt. 49. Plaintiff files a Reply to Dr. Fisher's Response and argues that: 1) Dr. Fisher has admitted that she is entitled to benefits and has paid for another plan participant's benefits after the policy with Regence was canceled, 2) Dr. Fisher's denial of benefits must be reviewed de novo, 3) the language of the Summary Plan Description and the Plan show that Ms. Lewis is entitled to benefits, 4) the decision to deny benefits because the contract was terminated is in conflict with the plain language of the plan, 5) the denial of benefits conflicts with the reasonable expectations of any employee because the Summary Plan Description is ambiguous regarding non-renewals and terminations, 6) any termination was postponed for six months following ineligibility. Dkt. 62. Plaintiff also files a Response in opposition to Dr. Fisher's Motion for Summary Judgment, arguing that it should be denied because: 1) there are at a minimum, issues of fact as to whether Dr. Fisher's failure to inform Plaintiff of relevant information constituted a breach of his fiduciary duties, and 2) at the very least, there are issues of fact regarding the misrepresentation regarding coverage by Dr. Fisher and his misrepresentation by omission regarding the failure to disclose the ongoing audit and its effect on benefits such that summary judgment dismissing the claim of federal equitable estoppel is improper. Dkt. 57. Dr. Fisher replies, 1) under the terms of the plan, Plaintiff was not eligible for benefits starting no later than April 1, 2004 when she ceased working a sufficient number of hours to meet the minimum hourly requirement to qualify as an active full time employee, 2) where a person is given discretionary authority over matters of administration of a plan, the Court must review such decisions for an abuse of discretion, 3) Regence's decisions were consistent with the Plan documents, 4) liability for breach of fiduciary duty must be based upon conduct which is fraudulent, is intentionally misleading or

involves trickery of active concealment of facts known to the fiduciary, and which is intended to benefit the fiduciary, and there is no evidence of such conduct here, 5) the relief Plaintiff requests for the alleged breach is not available, 6) a federal estoppel claim cannot be maintained where recovery on the claim would contradict written plan provisions, 7) even if Plaintiff was asserting claims upon which she could recover, Dr. Fisher's conduct does not serve as the basis for imposition of an equitable remedy. Dkt. 63. Regence responds to the above, arguing: 1) Plaintiff incorrectly argues that the Group Contract between Regence and Dr. Fisher was not terminated, 2) Dr. Fisher's failure to respond to the audit, and the group's failure to meet the eligibility requirements, terminated the Group contract, 3) a failure to renew the Group Contract terminates the Group Contract, 4) Plaintiff's argument regarding the "Guaranteed Renewability" language in the Group Contract fails, 5) Plaintiff incorrectly argues that she was entitled to an extension of coverage after the Group Contract was terminated, 6) Plaintiff incorrectly argues that alleged ambiguities in the Plan and the Group Contract should be construed against "the insurer," notwithstanding the fact that she no longer has any claims against Regence, 7) Plaintiff incorrectly asserts that Dr. Fisher admitted she is entitled to benefits, and 8) Plaintiff is not entitled to a conversion policy. Dkt. 72.

This opinion will address the motions for summary judgment on each of the Plaintiff's claims in the following order: 1) recovery of plan benefits pursuant to 29 U.S.C. § 1132(A)(1)(B), 2) breach of fiduciary duty pursuant to 29 U.S.C. § 1132(A)(3), 3) federal equitable estoppel and 4) attorneys fees.

## II. DISCUSSION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R.

Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

### B. RECOVERY OF PLAN BENEFITS PURSUANT TO 29 U.S.C. § 1132(a)(1)(B)

Under 29 U.S.C. § 1132(a)(1)(B), a civil action may be brought by a plan participant to recover benefits due him under the terms of his plan. ERISA authorizes actions to recover benefits against the Plan as an entity, and against the plan's administrator, but not the claims administrator. *Ford v. MCI Communications Corp.*, 399 F.3d 1076, 1081 (9th Cir. 2005). Benefit claims, brought under 29 U.S.C. § 1132(a)(1)(B) are reviewed under a deferential standard if the benefit plan gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where an ERISA plan vests the plan administrator with such discretionary authority, a district court may review the plan administrator's determination only for an abuse of discretion. *Winters v. Costco Wholesale Corp.*, 49 F.3d 550, 552 (9th Cir.), *cert. denied*, 516 U.S. 908 (1995). A decision by a plan administrator is not an abuse of discretion unless the decision is rendered without any explanation, or provisions of the plan are construed in a way that conflicts with the plan language, or the decision is so patently arbitrary and unreasonable as to lack foundation in factual basis. *Taft v. Equitable Life Assur. Soc.*, 9 F.3d 1469, 1472-73 (9th Cir. 1993). If the plan does not give the plan administrator or fiduciary discretionary authority to determine eligibility for

benefits or to construe the terms of the plan, or if a decision to terminate benefits was tainted by a conflict of interest, the de novo standard applies. *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. at 115; *Tremain v. Bell Industries*, 196 F.3d 970, 976-77 (9th Cir. 1999). While under an abuse of discretion standard review is limited to the record before the plan administrator, this limitation does not apply to de novo review. *Jebian v. Hewlett-Packard Co. Employee Benefits Organization Income Protection Plan,* 349 F.3d 1098, 1110 (9th Cir. 2003)(*citing McKenzie v. General Tel. Co.,* 41 F.3d 1310, 1316 (9th Cir.1994)).

In the case at bar, the Plan does not vest discretionary authority to determine eligibility for benefits or to construe the terms of the plan in a plan administrator, nor does it even name a plan administrator. The Plan does state that Regence "shall have discretionary authority to determine eligibility for benefits or to construe the terms of this contract." Dkt. 23, at 39, and Dkt. 30-3, at 53. But does not "specifically so designate" Regence as the Plan administrator. 29 U.S.C. 1002(16)(A) (providing that the term administrator means "the person specifically so designated by the terms of the instrument under which the plan is operated"). Section 1002(16)(A)(ii) of ERISA provides that where the plan does not designate the plan administrator, the plan sponsor is the plan administrator. Where, as is here, the employee benefit plan is established or maintained by a single employer, the plan sponsor is the employer. 28 U.S.C. § 1002(16)(B). Accordingly, Dr. Fisher is the plan administrator. Needless to say, the plan does not assign any discretionary authority from the plan administrator (Dr. Fisher) to the claims administrator (Regence). Because a plan administrator has discretion only where discretion is unambiguously retained, *Ingram v. Martin Marietta*, 244 F.3d 1109 (9th Cir. 2001), the decision to deny Plaintiff benefits under the Plan should be reviewed de novo.

Plaintiff's motion for summary judgment on her claim for benefits should be denied and Defendants Fisher and the Plan's cross motion for summary judgment on Plaintiff's claim for benefits should be granted. Plaintiff challenges the denial of her claims by arguing that she was eligible for benefits under the plan in effect in 2004. Dkt. 47. Parties do not dispute that the Plan has now been canceled. Plaintiff can not recover any benefits under the plan pursuant to § 1132(a)(1)(B) because the Plan is no longer in existence. *Peralta v. Hispanic Business, Inc.,* 419 F.3d 1064, 1073 (9th Cir. 2005)(holding that plaintiff could not seek monetary recovery equal to the benefits that would have been available had the plan not

been canceled). Accordingly, to the extent that Plaintiff seeks payment of her claims (that is benefits of the Plan) her motion for summary judgment should be denied, Defendants Fisher and the Plan's motion for summary dismissal of her claim for payment of benefits should be granted, and her claim for plan benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) should be dismissed.

### C. BREACH OF FIDUCIARY DUTIES PURSUANT TO 29 U.S.C. § 1132(a)(3)

Under 29 U.S.C. § 1132(a)(3), a civil action may be brought by a plan participant to "(a) enjoin any act or practice which violates any provision of [ERISA] or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan." "To establish an action for equitable relief under 29 U.S.C. § 1132(a)(3), the defendant must be an ERISA fiduciary acting in its fiduciary capacity, and must violate ERISA-imposed fiduciary obligations." *Ford v. MCI Communications Corp.*, 399 F.3d 1076, 1082 (9th Cir. 2005). ERISA fiduciaries are to discharge their duties with the "care, skill, prudence, and diligence" under the circumstances then prevailing that a prudent man acting in a like capacity would use. 29 U.S.C. § 1104 (a)(1)(B).

"[T]he broad fiduciary responsibilities imposed by ERISA require a plan administrator to provide timely notification to employees of termination of their benefits." *Peralta v. Hispanic Business, Inc.,* 419 F.3d 1064, 1071 (9th Cir. 2005). "Failure to so advise employees violates the obligation of a fiduciary to discharge his duties in the interest of the participants with 'care, skill, prudence, and diligence.'" *Id*. at 1073 (*citing* 29 U.S.C. § 1104 (a)(1)(B)).

As stated above in Section II. B., Plaintiff can not recover any benefits under the Plan pursuant to § 1132(a)(1)(B) because the Plan is no longer in existence. *Peralta* at 1073. However, in the Ninth Circuit, monetary relief may be available under 29 U.S.C. § 1132(a)(3) in the form of equitable relief in certain limited circumstances. *Peralta* at 1075. In *Peralta*, the employer provided a long-term disability insurance policy as a part of a benefits package. *Id*. The employer "inadvertently" canceled the policy "due to communication errors" and did not tell the employees of the cancellation. *Id*. Three months later, Peralta was injured in an automobile accident. *Id*. While she was in the hospital, her employer sent an e-mail to the employees informing them of the cancellation of the policy. *Id*. Peralta filed suit in federal court alleging breach of fiduciary duty, and sought an order either reinstating her benefits, or in the alternative, other orders that would provide equivalent substantive relief. *Id*. The Court held that failing to inform

plan participants of the cancellation of the policy three months after the cancellation constituted a breach of fiduciary duties under ERISA. *Id*. at 1072. The Court held, however, that Peralta could not recover any benefits pursuant to § 1132(a)(1)(B) because the Plan had been canceled. *Id.* at 1073. The Court then turned to the equitable relief provisions found in § 1132(a)(3). It noted that, "individual substantive relief under ERISA is available where an employer actively and deliberately misleads its employees to their detriment." *Peralta* at 1075. The Court found that there was no evidence in the record of "a scheme to either hide the fact of cancellation or affirmatively misrepresent the facts." *Peralta* at 1076. Nor was there evidence of "intentional misleading or trickery, or of any active concealment." *Peralta* at 1076. Accordingly, the Court found that the only remedy Peralta sought (money damages) was unavailable under the facts of the case. *Id.*

Here, as in *Peralta*, there is no basis to award monetary damages, that is, a return of benefits pursuant to § 1132(a)(3). There is no evidence that Dr. Fisher "actively and deliberately misled" Plaintiff in regard to either the existence of the audit, the cancellation of the policy, or failing to monitor Plaintiff's or the group's eligibility status. There is no evidence in the record of "a scheme to either hide the fact of cancellation or affirmatively misrepresent the facts." Nor is there evidence of "intentional misleading or trickery, or of any active concealment." As stated in *Peralta*, "[i]t is for Congress to provide a remedy where merely negligent administration results in the termination of coverage without timely notice, and no plan exists under which benefits may be paid." *Peralta* at 1076. Defendants' Fisher and the Plan's motion to summarily dismiss Plaintiff's breach of fiduciary duty claim, made pursuant to 29 U.S.C. § 1132(a)(3), should be granted and her breach of fiduciary duty claim should be dismissed.

### D. FEDERAL EQUITABLE ESTOPPEL

The Ninth Circuit permits federal equitable estoppel claims in ERISA actions. *Greany v. Western Farm Bureau Life Ins. Co.,* 973 F.2d 812 (9th Cir. 1992). A Plaintiff must meet two prerequisites before consideration of the four part test. *Id*. at 821. The prerequisites are "(a) the provisions of the plan at issue are ambiguous such that reasonable persons could disagree as to their meaning or effect, and (b) representations are made to the employee involving an oral interpretation of the plan." *Id.* If a Plaintiff can met the prerequisites, the elements of federal equitable estoppel are: "1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting

the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury." *Id*.

### 1. <u>Prerequisites for Estoppel- Plan Ambiguity and Oral Interpretations of the Plan</u>

Plaintiff argues that the Plan language governing the effective date of termination of the contract is ambiguous. Parties do not dispute that Plaintiff worked the requisite number of hours through at least March 2004, making her eligible for Plan benefits until that date. Plaintiff argues that under the Plan language, she is entitled to the three month leave of absence after that date, followed by a six month extension of benefits. Dkt. 62. Defendants argue that her right to an extension of benefits ended with termination of the contract between Regence and the Group. Dkts. 57 and 72.

The Plan Summary Description provides,

> **Termination of Coverage**: When you are no longer eligible for coverage or leave the group, coverage will cease at the end of the same calender month. However, you may be eligible for an extension of group benefits as described below. The extension of coverage will end when your group's Contract with [Regence] terminates (except for the maternity exception.) . . .
> **Three Month Leave of Absence**: You and your dependents may continue coverage for a period of not more than three months during a temporary employer-approved leave of absence, provided the rates are paid to [Regence]. A leave of absence will begin when you are no longer receiving a full salary, but no later than 90 calender days from the date you are no longer actively at work. . .
> **Six Month Extension**: If your group is not eligible for COBRA or if you do not qualify for a COBRA continuation for any reason, you are eligible for a six-month extension, provided rates are paid when due through your group representative as specified in you Contract. This extension does not apply for employees whose employment was terminated for misconduct.

Dkt. 30-3, at 55-56. The plain language of the Plan indicates that when the Plan's contract with Regence is terminated, the extension of coverage ends. The term "termination" is not defined in the Plan Summary Description, or in any of the other documents in the record. The ordinary definition of "termination" in Webster's Third New International Dictionary is "to bring to an end or cessation in time, to end formally and definitely." Utilizing the ordinary meaning of the terms in the Plan, any extension of coverage ended when the contract with Regence ended.

According to the December 22, 2004 letter from Regence to Dr. Fisher, the Plan's contract with Regence was not going to be "renewed" with a retroactive date of September 31, 2004. Dkt. 25, at 19. The Plan does not state whether Regence could make the non-renewal date effective retroactively, even if the group was in breach of the contract. (Regence argues, and Dr. Lewis acknowledges (Dkt. 49 at 4),

that coverage under the Plan was contingent upon having at least two employees working "full time," that is, 32 hours per week. Dkt. 23, at 21. Dr. Lewis argues that the Group did not meet this contingency for at least a portion of 2004. *Id*.) The Plan defines "renewal" as the "period each year when benefits and/or rates maybe adjusted for the next contract year. The renewal date is usually the same as the contract anniversary date." Dkt. 30-3, at 22. The "anniversary date" is defined as "the annual date when a contract is to renew; usually, but not always, the annual return of an effective date." *Id*. at 11. The Plan's use of equivocal language such as "usually but not always" supports the argument that the Plan language governing the effective date of termination of the contract is ambiguous. For the purposes of these motions, at least, the Plan language is ambiguous as to the effective date of the non-renewal or termination of coverage such that reasonable persons could disagree as to their meaning or effect. The first prerequisite to Plaintiff's federal estoppel claim is met.

Dr. Fisher and the Plan do not deny that Dr. Fisher told Plaintiff's husband that "as far as he knew," Plaintiff had health insurance under the Plan. As such, the second prerequisite (that representations are made to the employee involving an oral interpretation of the plan) is met. Dr. Fisher's and the Plan's argument, that Plaintiff can not maintain a federal estoppel claim where recovery on the claim would enlarge her rights beyond what she could recover under the unambiguous language of the plan itself, citing *Greany* at 822, is inapplicable here because the Plan language is ambiguous. Moreover, there is no allegation that if she was eligible for benefits under the Plan, the Plan would not cover the medical procedures Plaintiff had done in November and December of 2004. Plaintiff has met the two prerequisites for her federal estoppel claim.

2.  Elements of Federal Estoppel

There are issues of fact as to the first element to be considered, that is whether Dr. Fisher knew the facts. Although he indicates that he did not know his employees were no longer eligible for Plan benefits, it is undisputed that Dr. Fisher was the party in charge of ensuring that all participants were eligible for benefits under the Plan. The Master Application, filled out by Dr. Fisher on behalf of the Group, required that at least two employees had to work 32 hours a week for the group to remain eligible. Dkt. 30-2, at 2. It is undisputed that he was the party responsible for time keeping in his office. Moreover, he knew of the audit, at least by October. Dkt. 58, at 15.

The second element is whether the party to be estopped must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended. *Greany* at 821. There are issues of fact as to this element: whether Dr. Fisher's application for an extension of benefits and later assurances to Plaintiff's husband that "as far as he knew" she had health insurance was going to be acted upon. Plaintiff's husband alleges that he told Dr. Fisher that Plaintiff intended to use the insurance to have medical treatment done in late November or early December. Dkt. 61, at 2. Dr. Fisher denies that Plaintiff's husband told him that she was seeking medical treatment. Dkt. 23, at 73.

There are no issues of fact as to the third element, Plaintiff's ignorance of the true facts, particularly in light of the December 13, 2004 letter from Regence was to "confirm that Tamara L. Lewis has been enrolled in the six month extension, with an effective date of October 1, 2004." Dkt. 24, at 3. Although to eligible for benefits, an employee must be "full time" (as defined in the Master Application) and "active," there is no evidence in the record that Plaintiff knew what the hours the Master Application required to be worked or how many employees had to participate. Although there is no dispute that Plaintiff worked sufficient hours through March of 2004, parties have not addressed whether Plaintiff had sick leave, or vacation time remaining, (or whether that time qualified as "work") or her knowledge of those facts. Parties have not addressed the other Plan participants' eligibility or Plaintiff's knowledge of those facts. The record indicates that Plaintiff had no knowledge of the audit. Dkt. 26, at 2. There are no issues of fact as to Plaintiff's knowledge of the circumstances.

There are no issues of fact as to the final element, that Plaintiff relied on Dr. Fisher's conduct to her injury. It is undisputed that Plaintiff proceeded with medical care that was not an emergency and was not urgent based upon Dr. Fisher's statements. Dkt. 60, at 1.

### 3. Conclusion

Plaintiff has met the two prerequisites to her federal estoppel claim. There are issues of fact precluding summary judgment on Plaintiff's federal estoppel claim. The motions for summary judgment on this remaining claim should be denied.

### E. ATTORNEYS' FEES

Pursuant to ERISA, "in any action under this subchapter, . . . a court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). In determining the

appropriateness of an award of fees, the court should generally consider five factors:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees ... would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Elliot v. Fortis Benefits Ins. Co.*, 337 F.3d 1138, 1148 (9th Cir. 2003) (*citing Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir.1980). Plaintiff has not prevailed on any of her claims under ERISA. Accordingly, her motion for attorneys fees should be denied.

### D. CONCLUSION

Defendants properly noted that the state law claims raised in Plaintiff's Third Amended Complaint are preempted by ERISA. Dkt. 49. Based on the Fourth Amended Complaint, Plaintiff is not now raising any state law claims. Dkt. 55. Her remaq:ining claim is for federal estoppel. This order does not address Dr. Fisher, Kathleen Ann Stockman, and the Plan's cross claim against Regence. Dkt. 71.

### III. ORDER

Therefore, it is hereby **ORDERED** that:

(1) Plaintiff's Motion for Partial Summary Judgment Against Gregory Fisher and Gregory R. Fisher, DDS Employee Benefit and Welfare Plan (Dkt. 47) is **DENIED**;

(2) Gregory Fisher, D.D.S. and Kathleen Ann Stockman, husband and wife, and Gregory R. Fisher, DDS, Employee Benefit and Welfare Plan's Cross Motion for Summary Judgment (Dkt. 49) is **GRANTED, IN PART,** as to Plaintiff's recovery of plan benefits pursuant to 29 U.S.C. § 1132(A)(1)(B) claim and to Plaintiff's claim for breach of fiduciary duty pursuant to 29 U.S.C. § 1132(A)(3), and **DENIED, IN PART,** as to Plaintiff's federal estoppel claim; and

(3)     The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 7th day of August, 2007.

*Robert J. Bryan* (signature)
ROBERT J. BRYAN
United States District Judge

ORDER
Page - 15